DANIEL LAMBORN
vs.
THE COVINGTON CO. ET AL.   } July Term, 1848.

[INJURIES TO WATER COURSES—PRIVATE NUISANCES.]

NOTHING can be clearer than the power of this court to prohibit by injunction the obstruction of water courses, the diversion of streams from mills, the back flowage upon them, and injuries of the like kind, which, from their nature, cannot be adequately compensated by damages at law.

In cases of private nuisances, the court would, after hearing the parties, be authorized not only to interpose preventively, but may order them to be abated.

[The bill in this case was filed on the 13th of June, 1848, and alleges, that the complainant is the owner of a mill used for the manufacture of paper, situated on Deep Run, which forms part of the division line between Howard District and Anne Arundel County : that the mill-dam is built across said run, about 150 perches above the mill : that near the said dam, and on the Anne Arundel side of said run, there lies a tract of land in which are beds of iron ore, the property of the Covington Manufacturing Company ; that said company, through its agent, a certain Ezekiel Bell, and numerous workmen by him employed, have, since the year 1845, been constantly, and still are, engaged in raising iron ore from said land, and have continually deposited the offcast made by their excavations just below the said mill-dam, and in and upon said Deep Run, so that the original channel of the same, has, for a long time been completely covered, and the water thereby back up against and below said dam ; that to give some vent to the waters of said run, the said company caused a narrow trench to be dug about four perches distant from complainant's mill-race, and parallel thereto, which has been totally inadequate to carry off the flow of water from which cause the water has been backed up against the said mill-dam to the height of three or four feet, causing great injury and obstruction to the complainant, and has already put him to great expense in repairing said dam.

36

The bill further charges, that said company still continue to deposit the offcast of their ore beds below the said dam, along said run, and are now filling in the new channel of the said run, and raising the spoil banks higher, and extending it so as to back the water still deeper against said dam, said spoil bank being now about 15 feet high, and 25 perches long, and, that every rain carries down quantities of clay from said bank, to choke and impede the stream of said run; that unless the said company is compelled to desist from enlarging and extending said spoil bank, the backwater against said dam will become so deep, as to make it impossible to repair the same when such repairs become necessary, and that the value of complainant's property as a mill-seat will be entirely destroyed, as it has already been seriously diminished by what has already been done; that the complainant had frequently applied to Andrew Ellicott, the president of said company, and the said Bell, and requested them to desist from enlarging and extending said spoil bank, but said company refused to comply with said requests, and have threatened and intend still more to enlarge . and extend the said spoil bank, pretending that they have a legal right so to do. The bill then prays, that said company, and their said agent and workmen may be restrained by injunction from depositing any earth, clay or other material, on the spoil bank aforesaid so as to enlarge or extend the same, and for general relief. An injunction was granted, and issued according to the prayer of the bill.

The joint answer of the defendants was filed on the 23d of June, 1848, and admits that the complainant is the owner of the mill and mill-dam in his bill charged: that the Covington Manufacturing Company are the owners of the land adjoining said mill, and have their ore-bank thereon, as is charged in said bill : that Ezekiel Bell, one of the defendants, has been and is employed in raising ore upon the said bank, that in so doing he has entirely filled and blocked up the original channel of the stream called Deep Run, and has placed thereon the spoil bank made by the offcast of the ore bank, and that he was employed in increasing and enlarging the said spoil bank, until restrained by the writ of injunction granted in this case.

The defendants then aver that, the land through which said stream runs, and on which said spoil bank is placed, belongs to said company, and is used by them in the lawful pursuit of their regular business ; that it is necessary for them to have some convenient place for depositing the offcast from the mines, and the most convenient place for such purpose is where the old channel of deep run was ; that in order to obtain said place, they cut and dug through the land of said company, a new channel for said stream, and then placed their spoil bank where the old channel had been, and which they contend they have a right, both in law and equity, to do. They further state, and charge, that the new channel made by them is not a narrow trench, totally inadequate to carry off the flow of water, as alleged in the bill, but, on the contrary, is, in every respect, as large, and fully as wide and deep as the old channel was, and carries off freely all water that flows there in ordinary seasons, and they deny that complainant has suffered any injury or been put to any expense or trouble, on account of the change of the channel of deep run, or the formation of the spoil bank, or that he is likely or liable to suffer any such damage. They admit, that until restrained by the writ of injunction granted in this case, they were employed in increasing and enlarging the said spoil bank, but utterly deny, that they have, in any way, filled up the new channel of said run, either by throwing off cast therein, or by any other means, or have caused any backwater against the dam of complainant, on the contrary, they aver that there is a fall of two feet at present in the course of the stream from said dam, to the point opposite where the said spoil bank is placed, and that said fall is not thereby impeded nor liable, nor likely to be, but is amply sufficient to carry off all the water of the stream. The answer then prays that the injunction may be dissolved.

Depositions were taken, and by consent of parties admitted to be read at the hearing of the motion to dissolve. The case was, upon this motion, submitted on written arguments of the solicitors of the respective parties, and on the 29th of July, 1848, the following opinion was delivered :]

THE CHANCELLOR:

That the bill in this case, justified the court in interposing, by way of injunction, to prevent the apprehended injury to the property of the plaintiff, is undeniable. Nothing can be clearer, than the power of the court to prohibit the obstruction of water courses, the diversion of streams from mills, the back-flowage upon them, and injuries of the like kind, which, from their nature, cannot be adequately compensated by damages at law. 2 *Story's Eq.*, section 927; *Hammond* vs. *Fuller*, 1 *Paige*, 197; *Gardner* vs. *Village of Newburg*, 1 *Johns. Ch. R.* 165; 1 *ib.*, 272.

The bill in this case, after alleging that the defendants had filled up the original channel of the stream, upon which the plaintiff's mill stands, and below it, so as to back the water upon his mill-dam, and that in order to give some vent to the stream, had dug an artificial trench, which was inadequate to the object, charged that they were now engaged in filling up this new channel, and it prays that they may be restrained by injunction, from making further deposits below the mill-dam of the complainant, and along the bank of the present channel of the stream, so as to back the water against said dam. An injunction was granted accordingly, and the answer having been filed, the motion to dissolve it was submitted upon written arguments.

The bill, then, is to restrain a private nuisance, and, according to the authorities, the court would, after hearing the parties, be authorized, not only in interposing, preventively, but might order it to be abated. This, however, is not the application, it being simply an application to the court, to order a thing going on, to be stayed, to do which, the power is questioned. The answer in this case, might, perhaps, have been sufficient to dissolve the injunction, but depositions have been taken by consent, to avoid the necessity of an application to the court, under the act of 1835, ch. 380, section 8. And from an examination of them, I am satisfied it ought to be continued. It appears from the proof, that the defendants claim the right to persist in making deposits of earth, &c., in situations which

will have the effect to obstruct the flow of the water, to the prejudice of the complainant. This, I think, they have no right to do, and as the injunction is confined in its terms, and merely prohibits the depositing of earth, and other materials, on the bank, below the mill-dam of the complainant, which deposits, as shown by the proof, will be attended with injurious consequences to him, I do not think it should be· dissolved. It appears from the testimony of one of the witnesses, and he is uncontradicted, that the defendants have room enough for the deposit of their offcast, without approaching nearer the stream, though the haul will be longer. The continuance of the injunction, therefore, will not interfere materially with their operations.

THOS. DONALDSON for Complainant.
ROBERT LEMMON for Defendant.